## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SARAH K. DERMODY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: |
| LIMITED BRANDS, INC., and VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Sarah K. Dermody ("Plaintiff"), individually and on behalf of all others similarly situated, through her undersigned counsel, complains against Defendants, Limited Brands, Inc., and Victoria's Secret Stores Brand Management, Inc. (collectively, "Defendants" or "Victoria's Secret"), as follows based upon the investigation of her counsel and otherwise upon information and belief, except as to allegations specifically pertaining to herself, which are based upon her personal knowledge:

### I. NATURE OF ACTION

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendants in negligently, knowingly, and/or willfully sending text message advertisements to Plaintiff's cellular telephone without her prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331, because this is a civil action arising under the laws of the United States.

3. Personal jurisdiction over Defendants is proper under 735 ILCS 5/2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(b)(4), and (c).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this District including, *inter alia*, the transmission of the text messages that are the subject of this complaint to Plaintiff and other class members' wireless telephone numbers located in this District.

### III. PARTIES

5. Plaintiff, Sarah K. Dermody, is a natural person residing in Chicago, Illinois. Plaintiff is the primary user of the cellular telephone to which Defendants sent text message advertisements and is a member of the class defined herein.

6. Defendant, Limited Brands, Inc. ("The Limited"), is a corporation organized under the laws of Delaware with its principal place of business in Columbus, Ohio. The Limited sent text message advertisements to Plaintiff and other cellular telephone users comprising the class in violation of the TCPA, as alleged herein.

7. Defendant, Victoria's Secret Stores Brand Management, Inc., ("Victoria's Secret Stores") is a corporation organized under the laws of Delaware with its principal place of business in Reynoldsburg, Ohio. Victoria's Secret Stores sent text message advertisements to Plaintiff and other cellular telephone users comprising the class in violation of the TCPA, as alleged herein.

-3-

## IV. FACTUAL BACKGROUND

8. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.

9. The TCPA regulates, among other things, the use of automatic telephone dialing equipment, or "autodialers." Specifically, the plain language of Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make a call to any wireless number in the absence of an emergency or the prior express consent of the called party.

10. A text message is a call within the meaning of Section 227(b)(1)(A)(iii), *supra*.

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automatic telephone calls (which include text messages) are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

11. In recent years, merchants have increasingly looked to technologies through which to send bulk solicitations cheaply and to engage potential customers in a more effective manner than traditional forms of advertising.

12. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

13. An "SMS message" is a text message call directed to a wireless device through

the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be instantly received by the called party virtually anywhere worldwide.

14. Unlike more conventional advertisements, wireless spam can actually cost its recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur an usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

15. Over the course of an extended period beginning in at least 2013, Defendants directed the mass transmission of wireless spam to the cell phone numbers in Illinois and throughout the United States in an unlawful effort to market their stores and promote the sale of goods sold at those stores.

16. For example, on May 29, 2013, at 1:31 p.m. Central Daylight Time, Plaintiff's cellular telephone alerted her that a text message had been received.

17. Likewise, on June 4, 2013, at 12:16 p.m. Central Daylight Time, Plaintiff's cellular telephone alerted her that a text message had been received.

18. Again, on September 25, 2013, at 2:53 p.m. Central Daylight Time, Plaintiff's cellular telephone alerted her that a text message had been received.

19. Yet again on October 2, 2013, at 11:09 a.m. Central Daylight Time, Plaintiff's cellular telephone alerted her that a text message had been received.

20. Finally, on October 15, 2013, at 5:26 p.m. Central Daylight Time, Plaintiff's cellular telephone alerted her that a text message had been received.

21. The "from" field of each of the above text messages was identified cryptically as "877-465," a format which is an abbreviated telephone number known as an SMS short code used by Defendants to transmit text message advertisements *en masse*.

22. True and correct images of the text messages received by Plaintiff are submitted herewith as Group Exhibit A.

23. The URL contained in the above text messages, http://s.vspink.com, linked to a website owned and/or operated by Defendants to promote the Victoria's Secret brand, stores and the goods sold there.

## V. CLASS ACTION ALLEGATIONS

24. This action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), as set forth below.

25. *Class Definition.* Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All persons in the United States and its Territories to whom Limited Brands, Inc., and/or Victoria's Secret Stores Brand Management, Inc., or their affiliated companies or agents thereof sent one or more text messages advertising goods or services without the cellular telephone user's express consent.

Excluded from the Class are Defendants and any of their officers, directors or employees, Class counsel, the presiding judge, named plaintiffs in any substantially similar actions and members of their immediate families. Plaintiff hereby reserves his right to amend the above class and subclass definition based on discovery and the proofs at trial.

26. *Numerosity.* The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable. Plaintiff believes that there are at least several thousand persons in the Class. The exact number

and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendants.

27. *Commonality.* There are questions of law or fact common to the Class including, *inter alia*, the following:

    a. Whether the text messages described herein were sent by Defendants;

    b. Whether the text messages described herein were sent using an automatic telephone dialing system;

    c. Whether Defendants maintain records of the consent of Plaintiff or other Class members to send the text messages described herein;

    d. Whether the above-described records, if any, constitute express consent with the meaning of the TCPA;

    e. Whether the text messages described herein are exempt from the provisions of the TCPA;

    f. The number of text messages sent to Plaintiff and other Class members and the statutory measure of damages;

    g. Whether the conduct of Defendants alleged herein was knowing or willful within the meaning of the statute; and

    h. whether Plaintiff and the members of the Class are entitled to the damages, equitable, injunctive and other relief sought herein.

28. *Typicality.* The claims of Plaintiff are typical of the claims of the Class alleged herein. Plaintiff and other members of the Class are all persons to whom Defendants sent one or more text messages advertising goods or services without their express consent.

29. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class.

Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation. The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

30. *Fed. R. Civ. P. 23(b)(2) Requirements.* The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as Defendants have acted or have refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

31. Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

32. Defendants' alleged uniform common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

33. *Fed. R. Civ. P. 23(b)(3) Requirements.* This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

34. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

35. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## VI. CAUSES OF ACTION

### COUNT I

**(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*)**

36. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

37. At all times relevant, Plaintiff was a natural person residing in the State of Illinois. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

38. Victoria's Secret is, and at all times mentioned herein was, a corporation and a "person", as defined by 47 U.S.C. § 153(10).

39. Notwithstanding the fact Plaintiff did not give her express consent to be called, Victoria's Secret repeatedly sent text message advertisements to Plaintiff on her cellular telephone.

40. The text messages sent by Defendants to Plaintiff and the class were sent using an "automatic telephone dialing system," or "ATDS", as defined by 47 U.S.C. § 227(a)(1), as such messages were sent by a machine with the capacity to store and produce random telephone numbers.

41. Direct evidence of Defendants' use of an ATDS is within the sole possession of Defendants at this stage, and will therefore only come to light once discovery has been undertaken. Nonetheless, a reasonable inference can be drawn that the messages described herein were delivered by an ATDS based on the generic content of the message, the impersonal advertising content of the text message received from Defendants who had no reason to contact Plaintiff, and the existence of similar messages received by Plaintiff. *See* Group Exhibit A.

42. The telephone number to which Victoria's Secret sent text message

advertisements using an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

43. The complained of text messages were advertisements and, thus, constituted calls not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

44. Plaintiff did not provide "express consent" allowing Victoria's Secret to place telephone calls to Plaintiff's cellular phone or calls placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

45. Victoria's Secret did not make telephone calls to Plaintiff's cellular phone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

46. Victoria's Secret's transmission of text messages to Plaintiff's cellular phone was done using an "automatic telephone dialing system," for non-emergency purposes and, in the absence of Plaintiff's prior express consent, violated 47 U.S.C. §227(b)(1)(A).

47. The foregoing acts and omissions of Victoria's Secret constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

47. As a result of Victoria's Secret's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

48. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Victoria's Secret's violation of the TCPA in the future.

49. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT II

**(Willful or Knowing Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*)**

50. At all times relevant, Plaintiff was a natural person residing in the State of Illinois. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

51. Victoria's Secret is, and at all times mentioned herein was, a corporation and a "person", as defined by 47 U.S.C. § 153(10).

52. Notwithstanding the fact Plaintiff did not give her express consent to be called, Victoria's Secret repeatedly sent text message advertisements to Plaintiff on her cellular telephone.

53. The text messages sent by Defendants to Plaintiff and the class were sent using an "automatic telephone dialing system," or "ATDS", as defined by 47 U.S.C. § 227(a)(1), as such messages were sent by a machine with the capacity to store and produce random telephone numbers.

54. Direct evidence of Defendants' use of an ATDS is within their sole possession at this stage, and will therefore only come to light once discovery has been undertaken. Nonetheless, a reasonable inference can be drawn that the messages described herein were delivered by an ATDS based on the generic content of the message, the impersonal advertising content of the text message received from Defendants who had no reason to contact Plaintiff, and the existence of similar messages received by Plaintiff. *See* Group Exhibit A.

55. The telephone number to which Victoria's Secret sent text message advertisements using an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

56. The complained of text messages were advertisements and, thus, constituted calls

not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

57. Plaintiff did not provide "express consent" allowing Victoria's Secret to place telephone calls to Plaintiff's cellular phone or calls placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

58. Victoria's Secret's transmission of text messages to Plaintiff's cellular phone was done using an "automatic telephone dialing system," for non-emergency purposes and, in the absence of Plaintiff's prior express consent, violated 47 U.S.C. §227(b)(1)(A).

59. The foregoing acts of Victoria's Secret were willful and knowing violations of the provisions of 47 U.S.C. § 227 *et seq.* Besides the self-evident intentional nature of Victoria's Secret's acts, that its violation of the TCPA was willful or knowing is further evidenced by, *inter alia*, the fact that it had been sued for substantially similar violations of the TCPA prior to sending the text messages to Plaintiff described herein.

60. As a result of Victoria's Secret's knowing violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $1,500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

61. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Victoria's Secret's violation of the TCPA in the future.

62. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for and order and judgment against Defendants as follows:

A. Awarding Plaintiff and the Class statutory damages in the amount of $500.00 per violation of 47 U.S.C. § 227(b)(1) and allowable interest thereon;

    B.    Awarding Plaintiff and the Class statutory damages in the amount of $1,500.00 per willful or knowing violation of 47 U.S.C. § 227(b)(1) and allowable interest thereon;

    C.    Enjoining Defendants from further violating 47 U.S.C. § 227(b)(1)

    D.    Awarding Plaintiff and the Class their unreimbursed attorneys' fees, costs and expenses;

    E.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(b)(2) and (b)(3), and certifying the Class defined herein;

    F.    Designating Plaintiff as representative of the Class and his undersigned counsel as Class counsel; and

    G.    Granting such other and further relief as the Court deems just.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 21, 2013                        Respectfully submitted,

                                                  SARAH K. DERMODY

                                    By:    s/ William M. Sweetnam
                                                  One of Her Attorneys

                                          William M. Sweetnam
                                          SWEETNAM LLC
                                          582 Oakwood Avenue, Suite 200
                                          Lake Forest, Illinois 60045
                                          (847) 559-9040
                                          wms@sweetnamllc.com

                                          *Attorneys for Plaintiff Sarah K. Dermody*